ALICE SULLIVAN *vs.* JAMES H. O'CONNOR.

Suffolk. March 6, 1973. — May 9, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Doctor. Contract,* With doctor. *Damages.* For breach of contract with doctor.

Discussion of the law respecting liability of doctors to their patients for breach of contract to produce a given result and the measure of damages available. [581–588]

In an action by a professional entertainer against a surgeon for breach of a contract to improve the appearance of the plaintiff's nose in two operations, the plaintiff was entitled to recover not only her out of pocket expenses, but also for worsening of the appearance of her nose by the surgery and for pain and suffering and mental distress involved in a third operation. [588–589]

CONTRACT OR TORT. Writ in the Superior Court dated February 8, 1967.

The action was tried before *Brogna,* J.

*John F. Finnerty* for the defendant.

*Francis C. Newton, Jr.,* for the plaintiff.

KAPLAN, J. The plaintiff patient secured a jury verdict of $13,500 against the defendant surgeon for breach of contract in respect to an operation upon the plaintiff's nose. The substituted consolidated bill of exceptions presents questions about the correctness of the judge's instructions on the issue of damages.

The declaration was in two counts. In the first count, the plaintiff alleged that she, as patient, entered into a contract with the defendant, a surgeon, wherein the defendant promised to perform plastic surgery on her nose

and thereby to enhance her beauty and improve her appearance; that he performed the surgery but failed to achieve the promised result; rather the result of the surgery was to disfigure and deform her nose, to cause her pain in body and mind, and to subject her to other damage and expense. The second count, based on the same transaction, was in the conventional form for malpractice, charging that the defendant had been guilty of negligence in performing the surgery. Answering, the defendant entered a general denial.

On the plaintiff's demand, the case was tried by jury. At the close of the evidence, the judge put to the jury, as special questions, the issues of liability under the two counts, and instructed them accordingly. The jury returned a verdict for the plaintiff on the contract count, and for the defendant on the negligence count. The judge then instructed the jury on the issue of damages.

As background to the instructions and the parties' exceptions, we mention certain facts as the jury could find them. The plaintiff was a professional entertainer, and this was known to the defendant. The agreement was as alleged in the declaration. More particularly, judging from exhibits, the plaintiff's nose had been straight, but long and prominent; the defendant undertook by two operations to reduce its prominence and somewhat to shorten it, thus making it more pleasing in relation to the plaintiff's other features. Actually the plaintiff was obliged to undergo three operations, and her appearance was worsened. Her nose now had a concave line to about the midpoint, at which it became bulbous; viewed frontally, the nose from bridge to midpoint was flattened and broadened, and the two sides of the tip had lost symmetry. This configuration evidently could not be improved by further surgery. The plaintiff did not demonstrate, however, that her change of appearance had resulted in loss of employment. Payments by the plaintiff covering the defendant's fee and hospital expenses were stipulated at $622.65.

The judge instructed the jury, first, that the plaintiff

was entitled to recover her out-of-pocket expenses incident
to the operations. Second, she could recover the damages
flowing directly, naturally, proximately, and foreseeably
from the defendant's breach of promise. These would
comprehend damages for any disfigurement of the plain-
tiff's nose — that is, any change of appearance for the
worse — including the effects of the consciousness of such
disfigurement on the plaintiff's mind, and in this connec-
tion the jury should consider the nature of the plaintiff's
profession. Also consequent upon the defendant's breach,
and compensable, were the pain and suffering involved in
the third operation, but not in the first two. As there
was no proof that any loss of earnings by the plaintiff
resulted from the breach, that element should not enter
into the calculation of damages.

By his exceptions the defendant contends that the
judge erred in allowing the jury to take into account any-
thing but the plaintiff's out-of-pocket expenses (presum-
ably at the stipulated amount). The defendant excepted
to the judge's refusal of his request for a general charge
to that effect, and, more specifically, to the judge's refusal
of a charge that the plaintiff could not recover for pain
and suffering connected with the third operation or for
impairment of the plaintiff's appearance and associated
mental distress.[1]

The plaintiff on her part excepted to the judge's refusal
of a request to charge that the plaintiff could recover the
difference in value between the nose as promised and the
nose as it appeared after the operations. However, the
plaintiff in her brief expressly waives this exception and
others made by her in case this court overrules the de-
fendant's exceptions; thus she would be content to hold
the jury's verdict in her favor.

We conclude that the defendant's exceptions should be
overruled.

It has been suggested on occasion that agreements

---

[1] The defendant also excepted to the judge's refusal to direct a
verdict in his favor, but this exception is not pressed and could not
be sustained.

between patients and physicians by which the physician undertakes to effect a cure or to bring about a given result should be declared unenforceable on grounds of public policy. See *Guilmet* v. *Campell*, 385 Mich. 57, 76 (dissenting opinion). But there are many decisions recognizing and enforcing such contracts, see annotation, 43 A. L. R. 3d 1221, 1225, 1229–1233, and the law of Massachusetts has treated them as valid, although we have had no decision meeting head on the contention that they should be denied legal sanction. *Small* v. *Howard*, 128 Mass. 131. *Gabrunas* v. *Miniter*, 289 Mass. 20. *Forman* v. *Wolfson*, 327 Mass. 341. These causes of action are, however, considered a little suspect, and thus we find courts straining sometimes to read the pleadings as sounding only in tort for negligence, and not in contract for breach of promise, despite sedulous efforts by the pleaders to pursue the latter theory. See *Gault* v. *Sideman*, 42 Ill. App. 2d 96; annotation, *supra*, at 1225, 1238–1244.

It is not hard to see why the courts should be unenthusiastic or skeptical about the contract theory. Considering the uncertainties of medical science and the variations in the physical and psychological conditions of individual patients, doctors can seldom in good faith promise specific results. Therefore it is unlikely that physicians of even average integrity will in fact make such promises. Statements of opinion by the physician with some optimistic coloring are a different thing, and may indeed have therapeutic value. But patients may transform such statements into firm promises in their own minds, especially when they have been disappointed in the event, and testify in that sense to sympathetic juries.[2] If actions for breach of promise can be readily maintained, doctors,

---

[2] Judicial skepticism about whether a promise was in fact made derives also from the possibility that the truth has been tortured to give the plaintiff the advantage of the longer period of limitations sometimes available for actions on contract as distinguished from those in tort or for malpractice. See Lillich, The Malpractice Statute of Limitations in New York and Other Jurisdictions, 47 Cornell L. Q. 339; annotation, 80 A. L. R. 2d 368.

so it is said, will be frightened into practising "defensive medicine." On the other hand, if these actions were outlawed, leaving only the possibility of suits for malpractice, there is fear that the public might be exposed to the enticements of charlatans, and confidence in the profession might ultimately be shaken. See Miller, The Contractual Liability of Physicians and Surgeons, 1953 Wash. L. Q. 413, 416–423. The law has taken the middle of the road position of allowing actions based on alleged contract, but insisting on clear proof. Instructions to the jury may well stress this requirement and point to tests of truth, such as the complexity or difficulty of an operation as bearing on the probability that a given result was promised. See annotation, 43 A. L. R. 3d 1225, 1225–1227.

If an action on the basis of contract is allowed, we have next the question of the measure of damages to be applied where liability is found. Some cases have taken the simple view that the promise by the physician is to be treated like an ordinary commercial promise, and accordingly that the successful plaintiff is entitled to a standard measure of recovery for breach of contract — "compensatory" ("expectancy") damages, an amount intended to put the plaintiff in the position he would be in if the contract had been performed, or, presumably, at the plaintiff's election, "restitution" damages, an amount corresponding to any benefit conferred by the plaintiff upon the defendant in the performance of the contract disrupted by the defendant's breach. See Restatement: Contracts § 329 and comment a, §§ 347, 384 (1). Thus in *Hawkins* v. *McGee*, 84 N. H. 114, the defendant doctor was taken to have promised the plaintiff to convert his damaged hand by means of an operation into a good or perfect hand, but the doctor so operated as to damage the hand still further. The court, following the usual expectancy formula, would have asked the jury to estimate and award to the plaintiff the difference between the value of a good or perfect hand, as promised, and the value of the hand after the operation. (The same formula

would apply, although the dollar result would be less, if the operation had neither worsened nor improved the condition of the hand.) If the plaintiff had not yet paid the doctor his fee, that amount would be deducted from the recovery. There could be no recovery for the pain and suffering of the operation, since that detriment would have been incurred even if the operation had been successful; one can say that this detriment was not "caused" by the breach. But where the plaintiff by reason of the operation was put to more pain than he would have had to endure, had the doctor performed as promised, he should be compensated for that difference as a proper part of his expectancy recovery. It may be noted that on an alternative count for malpractice the plaintiff in the *Hawkins* case had been nonsuited; but on ordinary principles this could not affect the contract claim, for it is hardly a defence to a breach of contract that the promisor acted innocently and without negligence. The New Hampshire court further refined the *Hawkins* analysis in *McQuaid* v. *Michou,* 85 N. H. 299, all in the direction of treating the patient-physician cases on the ordinary footing of expectancy. See *McGee* v. *United States Fid. & Guar. Co.* 53 F. 2d 953 (1st Cir.) (later development in the *Hawkins* case) ; *Cloutier* v. *Kasheta,* 105 N. H. 262; *Lakeman* v. *LaFrance,* 102 N. H. 300, 305.

Other cases, including a number in New York, without distinctly repudiating the *Hawkins* type of analysis, have indicated that a different and generally more lenient measure of damages is to be applied in patient-physician actions based on breach of alleged special agreements to effect a cure, attain a stated result, or employ a given medical method. This measure is expressed in somewhat variant ways, but the substance is that the plaintiff is to recover any expenditures made by him and for other detriment (usually not specifically described in the opinions) following proximately and foreseeably upon the defendant's failure to carry out his promise. *Robins* v. *Finestone,* 308 N. Y. 543, 546. *Frankel* v. *Wolper,* 181 App. Div. (N. Y.) 485, 488, affd. 228 N. Y. 582.

*Frank* v. *Maliniak*, 232 App. Div. (N. Y.) 278, 280.
*Colvin* v. *Smith*, 276 App. Div. (N. Y.) 9, 10.[3] *Stewart*
v. *Rudner*, 349 Mich. 459, 465–473. Cf. *Carpenter* v.
*Moore*, 51 Wash. 2d 795. This, be it noted, is not a "resti-
tution" measure, for it is not limited to restoration of the
benefit conferred on the defendant (the fee paid) but in-
cludes other expenditures, for example, amounts paid for
medicine and nurses; so also it would seem according to
its logic to take in damages for any worsening of the
plaintiff's condition due to the breach. Nor is it an
"expectancy" measure, for it does not appear to con-
template recovery of the whole difference in value between
the condition as promised and the condition actually re-
sulting from the treatment. Rather the tendency of the
formulation is to put the plaintiff back in the position he
occupied just before the parties entered upon the agree-
ment, to compensate him for the detriments he suffered in
reliance upon the agreement. This kind of intermediate
pattern of recovery for breach of contract is discussed in
the suggestive article by Fuller and Perdue, The Reliance
Interest in Contract Damages, 46 Yale L. J. 52, 373,
where the authors show that, although not attaining the
currency of the standard measures, a "reliance" measure
has for special reasons been applied by the courts in a
variety of settings, including noncommercial settings.
See 46 Yale L. J. at 396–401.[4]

For breach of the patient-physician agreements under
consideration, a recovery limited to restitution seems
plainly too meager, if the agreements are to be enforced
at all. On the other hand, an expectancy recovery may
well be excessive. The factors, already mentioned, which
have made the cause of action somewhat suspect, also
suggest moderation as to the breadth of the recovery that

[3] See *Horowitz* v. *Bogart*, 218 App. Div. (N. Y.) 158, 160; *Monahan*
v. *Devinny*, 223 App. Div. (N. Y.) 547, 548; *Keating* v. *Perkins*, 250
App. Div. (N. Y.) 9, 10, and comment in 5 U. of Chicago L. Rev. 156.

[4] Some of the exceptional situations mentioned where reliance may
be preferred to expectancy are those in which the latter measure would
be hard to apply or would impose too great a burden; performance
was interfered with by external circumstances; the contract was in-
definite. See 46 Yale L. J. at 373–386; 394–396.

should be permitted. Where, as in the case at bar and in a number of the reported cases, the doctor has been absolved of negligence by the trier, an expectancy measure may be thought harsh. We should recall here that the fee paid by the patient to the doctor for the alleged promise would usually be quite disproportionate to the putative expectancy recovery. To attempt, moreover, to put a value on the condition that would or might have resulted, had the treatment succeeded as promised, may sometimes put an exceptional strain on the imagination of the fact finder. As a general consideration, Fuller and Perdue argue that the reasons for granting damages for broken promises to the extent of the expectancy are at their strongest when the promises are made in a business context, when they have to do with the production or distribution of goods or the allocation of functions in the market place; they become weaker as the context shifts from a commercial to a noncommercial field. 46 Yale L. J. at 60–63.

There is much to be said, then, for applying a reliance measure to the present facts, and we have only to add that our cases are not unreceptive to the use of that formula in special situations. We have, however, had no previous occasion to apply it to patient-physician cases.[5]

---

[5] In *Mt. Pleasant Stable Co.* v. *Steinberg,* 238 Mass. 567, the plaintiff company agreed to supply teams of horses at agreed rates as required from day to day by the defendant for his business. To prepare itself to fulfil the contract and in reliance on it, the plaintiff bought two "Cliest" horses at a certain price. When the defendant repudiated the contract, the plaintiff sold the horses at a loss and in its action for breach claimed the loss as an element of damages. The court properly held that the plaintiff was not entitled to this item as it was also claiming (and recovering) its lost profits (expectancy) on the contract as a whole. Cf. *Noble* v. *Ames Mfg. Co.* 112 Mass. 492. (The loss on sale of the horses is analogous to the pain and suffering for which the patient would be disallowed a recovery in *Hawkins* v. *McGee,* 84 N. H. 114, because he was claiming and recovering expectancy damages.) The court in the *Mt. Pleasant* case referred, however, to *Pond* v. *Harris,* 113 Mass. 114, as a contrasting situation where the expectancy could not be fairly determined. There the defendant had wrongfully revoked an agreement to arbitrate a dispute with the plaintiff (this was before such agreements were made specifically enforceable). In an action for the breach, the plaintiff was held entitled to recover for his preparations for the arbitration which had been rendered useless and a waste, including the

The question of recovery on a reliance basis for pain and suffering or mental distress requires further attention. We find expressions in the decisions that pain and suffering (or the like) are simply not compensable in actions for breach of contract. The defendant seemingly espouses this proposition in the present case. True, if the buyer under a contract for the purchase of a lot of merchandise, in suing for the seller's breach, should claim damages for mental anguish caused by his disappointment in the transaction, he would not succeed; he would be told, perhaps, that the asserted psychological injury was not fairly foreseeable by the defendant as a probable consequence of the breach of such a business contract. See Restatement: Contracts, § 341 and comment a. But there is no general rule barring such items of damage in actions for breach of contract. It is all a question of the subject matter and background of the contract, and when the contract calls for an operation on the person of the plaintiff, psychological as well as physical injury may be expected to figure somewhere in the recovery, depending on the particular circumstances. The point is explained in *Stewart* v. *Rudner*, 349 Mich. 459, 469. Cf. *Frewen* v. *Page*, 238 Mass. 499; *McClean* v. *University Club*, 327 Mass. 68. Again, it is said in a few of the New York cases, concerned with the classification of actions for statute of limitations purposes, that the absence of allegations demanding recovery for pain and suffering is characteristic of a contract claim by a patient against a physician, that such allegations rather belong in a claim for malpractice. See *Robins* v. *Finestone*, 308 N. Y. 543,

plaintiff's time and trouble and his expenditures for counsel and witness. The context apparently was commercial but reliance elements were held compensable when there was no fair way of estimating an expectancy. See, generally, annotation, 17 A. L. R. 2d 1300. A noncommercial example is *Smith* v. *Sherman*, 4 Cush. 408, 413–414, suggesting that a conventional recovery for breach of promise of marriage included a recompense for various efforts and expenditures by the plaintiff preparatory to the promised wedding. See *Garfield & Proctor Coal Co.* v. *Pennsylvania Coal & Coke Co.* 199 Mass. 22, 43; *Narragansett Amusement Co.* v. *Riverside Park Amusement Co.* 260 Mass. 265, 279–281. Cf. *Johnson* v. *Arnold*, 2 Cush. 46, 47; *Greany* v. *McCormick*, 273 Mass. 250, 253. But cf. *Irwin* v. *Worcester Paper Box Co.* 246 Mass. 453.

547; *Budoff* v. *Kessler*, 2 App. Div. 2d (N. Y.) 760. These remarks seem unduly sweeping. Suffering or distress resulting from the breach going beyond that which was envisaged by the treatment as agreed, should be compensable on the same ground as the worsening of the patient's conditions because of the breach. Indeed it can be argued that the very suffering or distress "contracted for" — that which would have been incurred if the treatment achieved the promised result — should also be compensable on the theory underlying the New York cases. For that suffering is "wasted" if the treatment fails. Otherwise stated, compensation for this waste is arguably required in order to complete the restoration of the status quo ante.[6]

In the light of the foregoing discussion, all the defendant's exceptions fail: the plaintiff was not confined to the recovery of her out-of-pocket expenditures; she was entitled to recover also for the worsening of her condition,[7] and for the pain and suffering and mental distress involved in the third operation. These items were com-

---

[6] Recovery on a reliance basis for breach of the physician's promise tends to equate with the usual recovery for malpractice, since the latter also looks in general to restoration of the condition before the injury. But this is not paradoxical, especially when it is noted that the origins of contract lie in tort. See Farnsworth, The Past of Promise: An Historical Introduction to Contract, 69 Col. L. Rev. 576, 594–596; Breitel, J. in *Stella Flour & Feed Corp.* v. *National City Bank*, 285 App. Div. (N. Y.) 182, 189 (dissenting opinion). A few cases have considered possible recovery for breach by a physician of a promise to sterilize a patient, resulting in birth of a child to the patient and spouse. If such an action is held maintainable, the reliance and expectancy measures would, we think, tend to equate, because the promised condition was preservation of the family status quo. See *Custodio* v. *Bauer*, 251 Cal. App. 2d 303; *Jackson* v. *Anderson*, 230 So. 2d 503 (Fla. App.). Cf. *Troppi* v. *Scarf*, 31 Mich. App. 240. But cf. *Ball* v. *Mudge*, 64 Wash. 2d 247; *Doerr* v. *Villate*, 74 Ill. App. 2d 332; *Shaheen* v. *Knight*, 11 D. & C. 2d (Pa.) 41. See also annotation, 27 A. L. R. 3d 906.

It would, however, be a mistake to think in terms of strict "formulas." For example, a jurisdiction which would apply a reliance measure to the present facts might impose a more severe damage sanction for the wilful use by the physician of a method of operation that he undertook not to employ.

[7] That condition involves a mental element and appraisal of it properly called for consideration of the fact that the plaintiff was an entertainer. Cf. *McQuaid* v. *Michou*, 85 N. H. 299, 303–304 (discussion of continuing condition resulting from physician's breach).

pensable on either an expectancy or a reliance view. We might have been required to elect between the two views if the pain and suffering connected with the first two operations contemplated by the agreement, or the whole difference in value between the present and the promised conditions, were being claimed as elements of damage. But the plaintiff waives her possible claim to the former element, and to so much of the latter as represents the difference in value between the promised condition and the condition before the operations.

*Plaintiff's exceptions waived.*
*Defendant's exceptions overruled.*