CAROLYN C. CLEVENGER & another[1] vs. RAYMOND F. HALING, JR.

Berkshire.  May 10, 1979. — September 25, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Doctor.  Contract*, With doctor.  *Medical Malpractice*, Contract with doctor.  *Evidence*, Hearsay, Admissions.

In an action for breach of contract against a doctor who performed a tubal ligation on the plaintiff, after which the plaintiff bore a child, the evidence, taken in its form most favorable to the plaintiff, did not disclose an enforceable promise by the defendant that the plaintiff would not have another child. [156-160] QUIRICO, J., with whom LIACOS and ABRAMS, JJ., joined, dissenting.

CIVIL ACTION commenced in the Superior Court on December 29, 1975.

[1] Edward R. Clevenger, the husband of Carolyn C. Clevenger.

The case was tried before *Alberti*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Leo F. Evans* for the plaintiffs.

*Brian J. Quinn (Ronald E. Oliveira* with him) for the defendant.

WILKINS, J. In December, 1973, Carolyn C. Clevenger (plaintiff), the mother of two daughters, consulted the defendant, an obstetrician and gynecologist, for a physical examination and "to discuss having [her] tubes tied." The defendant performed a tubal ligation on the plaintiff on January 10, 1974. The plaintiff's third daughter was born March 17, 1975.

The plaintiffs commenced this action, alleging negligence and breach of contract. The judge directed a verdict for the defendant on the negligence count, and the plaintiffs do not challenge that ruling in this appeal. The judge submitted the contract count to the jury, reserving leave to enter a verdict for the defendant notwithstanding a verdict in favor of the plaintiffs, and he also submitted interrogatories to the jury concerning the contract claim. The jury returned a verdict for the defendant, and the plaintiffs have appealed from a judgment for the defendant on that verdict. We conclude that the evidence did not warrant submitting the case to the jury on the contract count, even considering certain evidence which the judge excluded.[2] Consequently, we need not pass on various issues that the plaintiffs have argued in this appeal, which we transferred here on our own motion.[3]

---

[2] By submitting the case to the jury, reserving leave to enter a verdict for the defendant (see Mass. R. Civ. P. 50 [b], 365 Mass. 814 [1974]), the judge followed the appropriate and more efficient practice "in any but a plain case." *Soares* v. *Lakeville Baseball Camp, Inc.*, 369 Mass. 974, 975 (1976). *Smith* v. *Ariens Co.*, 375 Mass. 620, 627 (1978). In this appeal, the verdict for the defendant on the contract count can rightly be sustained by a determination that the evidence did not warrant submission of that count to the jury.

[3] One issue concerns the proper consequences of the jury's answers to two interrogatories. They answered affirmatively to the question whether

Clevenger v. Haling.

The evidence in this case, taken in its form most favorable to the plaintiffs, does not disclose an enforceable promise by the defendant that the plaintiff would not have another child. The only evidence on which a promise, guaranty, or warranty of a specific result could have been based is the testimony of the plaintiff as to what the defendant told her in the course of her initial visit to the defendant in December, 1973.[4] Because the plaintiff's testimony concerning that conversation is crucial to the disposition of this appeal, we set it forth fully, omitting only one interruption when the witness started to recite what another physician had told her. The plaintiff testified: "Well, after the initial visit, I mean the initial examination, we went in and he said that I was in good health. And I said that I was interested in having my tubes tied. And he said, well, you know, that is not an operation that you go into lightly. And I said, I know. I said, I have had a lot of problems with my back. When I had my second child I had a back operation, as after I had my first baby and then I had problems delivering my second baby, and I was really frightened to have any more, and I — we couldn't afford any more. And I said, I know that this is what I would like to do. He said, well, you know, this is a permanent thing. You are not going to have any more children after this operation. It is not something — have you discussed this with your husband? And I said, yes, we have had two years to think about it. I said, I wanted the operation done after [my second child], and I was too young at that time. The physician that I had at that time was Doctor Dorman, and he told me that — [interruption]. . . . So I waited two years, and was going to

there was a contract between the plaintiff and the defendant "calling for a promised result that she would not have children in the future." Then they answered negatively to the question whether the defendant did "breach that contract." We need not decide whether these answers are irreconcilable or, if they are, whether the plaintiffs' failure to object to the answers before the jury were discharged bars any right to challenge the jury's verdict in this appeal.

[4] The defendant testified that he had no memory of the details of any discussion with the plaintiff prior to the operation.

go back to the other doctor. I was afraid he wouldn't do it, so I consulted [the defendant]. So he said we will do it. You are in good health, in reason, why not. As long as you know it's a permanent thing. This is it. There is no reversal. You are not going to have any more children. I said, I know. That is what I want. I don't want any more. He said he would make an appointment for the hospital and take care of things from there."

The only other evidence that might bear on the question whether the defendant promised a specific result was certain postoperative conversations. These conversations could not have created an enforceable contractual obligation, but the evidence was arguably relevant as to the defendant's state of mind at the time of the pre-operative conversation, as tending to show that the defendant had believed that after the operation the plaintiff would not be able to have a child. One postoperative conversation occurred in July, 1974, when the plaintiff telephoned the defendant.[5] The judge ultimately struck this testimony on his own motion. Testimony of two conversations, also occurring in the summer of 1974, between the plaintiff's mother and the defendant was also excluded.[6] Even if all the excluded testimony had been admitted, the evidence would not have warranted a finding of a promise of a specific result.

In a recent discussion of a case involving a claim that a physician had contracted to achieve a particular medical result, we noted that actions based on such alleged contracts

---

[5] The plaintiff testified to this conversation as follows: "I told him that I wasn't feeling well and that I was one week late with my period, and I said, do you think there could be a problem, and he said, no, don't worry. I want to assure you there is no way that you can possibly be pregnant."

[6] The offer of proof was that the plaintiff's mother would testify that the defendant told her that it was impossible for the plaintiff to be pregnant. The judge excluded the testimony because it was hearsay, but offered to admit it if the plaintiff's counsel could provide a hearsay exception. No exception (such as that for an admission) was brought to the judge's attention.

are allowed but that there must be "clear proof." *Sullivan v. O'Connor,* 363 Mass. 579, 582-583 (1973).[7] In *Salem Orthopedic Surgeons, Inc.* v. *Quinn,* 377 Mass. 514, 517 (1979), we characterized the *Sullivan* case as adopting the view that recovery may be had against a physician "who *expressly agrees* to produce a certain medical result and then, without fault, fails to do so" (emphasis supplied). Some courts have taken the position that there must be separate consideration for the physician's promise,[8] and at least one has adopted the view that a higher burden of proof ("clear and convincing evidence") is required than in the normal civil action (*Sard* v. *Hardy,* 281 Md. 432, 453 [1977]). Some States require enforceable medical contracts to be in writing. See Note, Physicians and Surgeons — *Sullivan* v. *O'Connor:* A Liberal View of the Contractual Liability of Physicians and Surgeons, 54 N.C.L. Rev. 885, 902 n.102 (1976), citing statutes in Michigan, Ohio, and Pennsylvania.

"Clear proof" does not require proof of special consideration for the promise nor does it heighten the burden of proof. What it does require is that the trier of fact give

---

[7] In that opinion, we noted that "[i]t is not hard to see why the courts should be unenthusiastic or skeptical about the contract theory. Considering the uncertainties of medical science and the variations in the physical and psychological conditions of individual patients, doctors can seldom in good faith promise specific results. Therefore it is unlikely that physicians of even average integrity will in fact make such promises. Statements of opinion by the physician with some optimistic coloring are a different thing, and may indeed have therapeutic value. But patients may transform such statements into firm promises in their own minds, especially when they have been disappointed in the event, and testify in that sense to sympathetic juries. If actions for breach of promise can be readily maintained, doctors, so it is said, will be frightened into practising 'defensive medicine.' On the other hand, if these actions were outlawed, leaving only the possibility of suits for malpractice, there is fear that the public might be exposed to the enticements of charlatans, and confidence in the profession might ultimately be shaken." *Sullivan* v. *O'Connor,* 363 Mass. 579, 582-583 (1973) (citation and footnote omitted).

[8] See, e.g., *Rogala* v. *Silva,* 16 Ill. App. 3d 63, 65 (1973); *Sard* v. *Hardy,* 281 Md. 432, 451 (1977).

attention to particular factors in deciding whether the physician made a statement which, in the context of the relationship, could have been reasonably interpreted by the patient as a promise that a given result or cure would be achieved.[9] The factors relevant in such an appraisal and their respective values or weights will vary with the circumstances of given cases. Some of the possible factors are noted in the *Sullivan* case. It should be regarded as a negative factor, although one not in itself determinative, that the physician and patient did not focus on the question whether the physician was undertaking to achieve a given result. The trier of fact should not adopt a relaxed attitude that might subject a physician to liability for making statements reasonably calculated only to reassure a patient or, as in this case, for stating the significant consequences that could be expected to follow upon a successful surgical procedure.

Here the defendant rightly emphasized the significance of a tubal ligation which, according to the testimony, is effective in the overwhelming percentage of the cases where the surgical procedure is carried out with due care.[10] The defendant's words were designed to make sure that the plaintiff knew the operation was non-reversible in character. See *Rogala* v. *Silva*, 16 Ill. App. 3d 63, 66-67 (1973). The parties did not focus on the question of a promise, nor were the words used promissory in nature. Doubt could be lessened or removed in such a case if the physician were to

---

[9] Compare *Custody of a Minor (No. 1)*, 377 Mass. 876, 884-886 (1979), an instance where the court rejected a "clear and convincing" standard intended to heighten the burden of proof, but called for specific findings by the judge to demonstrate that "close attention has been given the evidence" and that the conclusion reached "has been persuasively shown."

[10] There was uncontradicted expert testimony that pregnancies occur in some instances in spite of the nonnegligent performance of such an operation. The physician who delivered the plaintiff's third child and performed a second tubal ligation, but by a different procedure, testified that there is a rate of "failure" for all tubal ligation procedures which varies in the range of "one per two-hundred and fifty cases, one per five hundred, one per one thousand."

call attention to the possibility that the operation might not succeed despite all standard surgical precautions. But we are persuaded on the whole that the case for liability was not sufficiently demonstrated to warrant submission to the jury.

*Judgment affirmed.*


QUIRICO, J. (dissenting, with whom Liacos and Abrams, JJ., join). For various reasons discussed below, I respectfully dissent. I write on the assumption that *Sullivan* v. *O'Connor,* 363 Mass. 579 (1973), remains the law and that, in consequence, there is no obstacle to the plaintiff's seeking damages for the defendant's alleged breach of a contract to produce a medical result. I believe that errors in the exclusion of evidence so prejudiced the plaintiff that she is entitled to a new trial. Moreover, I cannot agree with the holding of the court that the evidence, either with or without those statements which I believe were erroneously excluded, was insufficient to prove the existence of an express contract to produce a specific medical result. I would therefore reverse the judgment entered below and remand the case for a new trial.

1. *Errors in excluding evidence.* The plaintiff sought to introduce in evidence three statements made by the defendant in the summer of 1974. These statements, and the circumstances in which they were made, are set forth in the court's opinion, *supra* at notes 5-6. In substance, all the statements asserted that it was impossible for the plaintiff to be pregnant. The judge initially allowed the plaintiff to testify as to one of these statements made to her. He later reversed himself, however, and he ordered the testimony struck and instructed the jury to disregard it. Although the precise reason for striking the testimony is unclear, the judge apparently relied on a supposed rule of law to the effect that "[a]ny statement after the contract has been performed, in this case after the operation took place, concern-

ing that contract, what might have been a promise, is inadmissible to establish that the contract was made under certain terms and conditions." The judge later excluded evidence of other similar statements to the plaintiff's mother on the ground of the hearsay rule, holding, in effect, that the plaintiff had the burden of demonstrating the admissibility of the statements under some exception to that rule.

It is clear that no unilateral statement or conduct by a party to a contract occurring after the performance of the contract can change the obligations of the parties thereunder.[1] But statements made at any time after the making of the contract may shed light on the meaning ascribed by the parties to the language they used. See, e.g., *Gishen* v. *Dura Corp.*, 362 Mass. 177, 182 (1972); *Jennings* v. *Whitehead & Atherton Mach. Co.*, 138 Mass. 594, 596 (1885). "This evidence is not received for the purpose of constructing a new contract or varying the old one, . . . but is to enable the judge to understand the subject matter of the agreement as it lay in the minds of the parties and the meaning that they themselves put upon any doubtful or ambiguous terms they may have used, and so to apply their language correctly to the subject matter which was in their contemplation." *Rizzo* v. *Cunningham*, 303 Mass. 16, 21 (1939).

In this case, the various statements made by the defendant, when considered with the other evidence in the case, might lead a jury to infer not only that the defendant believed the plaintiff to be incapable of becoming pregnant in the summer of 1974, but also that he had previously prom-

---

[1] It is unnecessary to decide whether, in the circumstances of this case, the defendant's statements could be construed as representations in the nature of a new or renewed warranty so as to give rise to an action for deceit if relied upon by the plaintiff to her detriment. Cf., e.g., *Lowell Gas Co.* v. *Attorney Gen.*, 377 Mass. 37, 53-54 (1979), and cases cited (concerning representations of facts capable of exact knowledge); Restatement (Second) of Contracts § 90 (Tent. Drafts Nos. 1-7, 1973) (effect of promise inducing reliance). We are concerned only with the sufficiency of the proof on the theory adopted by the plaintiff.

ised to make her so. Thus, testimony concerning the postoperative statements was relevant to aid the jury in determining what the parties meant by their pre-operative conversation, and it was therefore presumptively admissible.

Reliance on the hearsay rule as a ground for excluding the evidence is unpersuasive. In classical terms, hearsay is an out-of-court statement offered to prove the truth of the matter asserted. W.B. Leach & P.J. Liacos, Massachusetts Evidence 183 (4th ed. 1967). McCormick, Evidence § 246, at 584 (2d ed. 1972). Fed. R. Evid. 801(c). In this case, the jury was not asked to believe that the plaintiff could never become pregnant after the surgery by the defendant. Indeed, the contrary was the foundation of the lawsuit — the plaintiff did again become pregnant notwithstanding the surgery. Rather, the jury was asked by the plaintiff to believe that the defendant had promised and intended that the plaintiff would be rendered incapable of becoming pregnant. Offered for such a purpose, the defendant's statements were simply not hearsay. See *Productora e Importadora de Papel, S.A. de C.V.* v. *Fleming,* 376 Mass. 826, 842 (1978); *Commonwealth* v. *Leaster,* 362 Mass. 407, 412 (1972).

Even if the proffered statements were technically hearsay, they were so obviously admissions by the defendant as to be admissible as a matter of course. There was no necessity for the plaintiff to pursue the empty formalism of citing the "admission exception" to the hearsay rule (if, indeed, the statements could be admitted only under such an "exception" to the rule).[2] Accordingly, I would hold that testimony concerning the statements was improperly excluded.

---

[2] It is both unnecessary and unprofitable to indulge in a hair-splitting analysis of the question whether an admission is hearsay within an exception or is not hearsay at all. See, e.g., McCormick, Evidence § 262, at 628-629 (2d ed. 1972); E. Morgan, Basic Problems of State and Federal Evidence 241 (Weinstein 5th ed. 1976); 4 J. Wigmore, Evidence § 1048, at 2-8 (Chadbourn rev. ed. 1972); Fed. R. Evid. 801(d). "This theoretical difference is of no practical importance." W.B. Leach & P.J. Liacos, Massachusetts Evidence 194 (4th ed. 1967). What is important is that admissions are competent evidence regardless of the theory which justified their use.

I believe further that the error in excluding the statements caused substantial prejudice to the plaintiff. In response to special interrogatories, the jury answered inconsistently that (1) the defendant promised the plaintiff she would not have children, but that (2) the defendant did not breach the contract of which such promise was a part. In my view, this inconsistency stemmed in part from the erroneous evidentiary rulings and reflected confusion over the import of the evidence.[3] The plaintiff was entitled to place before the jury evidence susceptible of being interpreted as an admission by the defendant that, if he had performed what he had promised to do, the plaintiff could not be pregnant in the summer of 1974. Having been prevented from doing so, the plaintiff is now entitled to a new trial.

2. *Sufficiency of the evidence.* I also disagree with the conclusion of the court that there was insufficient evidence of an express contract for the case to go to the jury. In arriving at its conclusion that the evidence was insufficient, the court cites our decision in *Sullivan* v. *O'Connor,* 363 Mass. 579 (1973), for the proposition that there must be "clear proof" that the defendant contracted to achieve a particular medical result.[4] The court then notes that "[i]t should be regarded as a negative factor, although one not itself determinative, that the physician and patient did not focus on the question whether the physician was undertaking to achieve a given result."

_____

[3] It was within the judge's discretion whether to grant relief from the inconsistent answers when the claim for such relief was made for the first time in the motion for a new trial. See *Hathaway* v. *Checker Taxi Co.,* 321 Mass. 406, 412 (1947), and cases cited. It does not follow, however, that because the motion for a new trial raising that question is denied, the plaintiff is precluded from seeking appellate review of evidentiary rulings, the effect of which is manifested in those same inconsistent answers.

[4] The court recognizes that "clear proof" does not "heighten the burden of proof." See *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. 849, 873-877 (1975) (Quirico, J., dissenting). I question, however, the practical utility of using the words "clear proof" while stating at the same time that they do not "heighten the burden of proof." It is unnnecessary to pursue the point further, for I read the court's opinion as resting on the lack of evidence of agreement rather than on the quantum of evidence.

I believe that in this case there was in fact evidence of a promissory "focus" on an agreed result, and that the jury could have found a reasonable expectation by the plaintiff of a particular result.

It could be found from the plaintiff's testimony that the sole result which she desired to obtain from the tubal ligation was that she would become incapable of having children thereafter. The court apparently views the defendant's statements as "reasonably calculated only to reassure a patient or, as in this case, for stating the significant consequences that could be expected to follow upon a successful surgical procedure." It relies on this view of the evidence to decide that, in the context of this particular professional relationship, the physician was not promising a specific result. Plainly, however, the defendant's secret intentions have nothing to do with the objective meaning of his words. The jury could reasonably have inferred, based on the plaintiff's testimony alone and without reference to the defendant's statements that were excluded, that the plaintiff desired not to have to endure further pregnancies. Furthermore, the defendant had reason to know that such was the plaintiff's intention and should bear any risk that his own language would be misunderstood. See, e.g., Restatement (Second) of Contracts § 227 (2) (b) (Tent. Drafts Nos. 1-7, 1973). It was, therefore, open to the jury to find, as they did, that a contract to produce a particular medical result arose and that the plaintiff reasonably understood the defendant to warrant her future sterility. The fact that we, as judges, might not draw the same inference is beside the point. Similarly, it is unimportant that the parties omitted to use words like "warranty," "guaranty," or the like and that the plaintiff, rather than the defendant, proposed the procedure.[5] It is enough that the evidence, reasonably

---

[5] If a physician solicits a patient to undergo an elective, and ultimately unsuccessful, procedure, he may well be suspected of promising something more than a physician who merely agrees to do what his patient requests. Here, however, the plaintiff presumably forbore the use of

viewed, permitted the inferences necessary for the jury to conclude that the parties made an express contract looking toward achievement of a particular medical result.

The law generally permits the formation of a binding contractual obligation whether or not the parties are specifically aware of the legal consequences of their acts. Restatement (Second) of Contracts § 21B (Tent. Drafts Nos. 1-7, 1973). If the court harbors hostility for the holding of *Sullivan,* I believe it would be better to deal directly with the continued wisdom of allowing contractual remedies for medical procedures which fail to produce a promised result rather than to impose artificial obstacles to pursuing the disfavored remedy. Cf. *Salem Orthopedic Surgeons, Inc.* v. *Quinn,* 377 Mass. 514, 520-521 (1979).

3. The plaintiff seasonably raised and argued some questions of law relating to the measure of her damages. Because the court has decided to affirm the judgment for the defendant and has not discussed these questions, it would be inappropriate for me to do so.

4. I would hold (a) that there was sufficient evidence to go to the jury on the contract issue and (b) that the judge erred in excluding evidence of the defendant's admissions. I would therefore reverse the judgment and remand the case to the Superior Court for a new trial.

---

other methods of birth control once the tubal ligation was completed, relying on the defendant's representations that she could no longer have children. As it was surely within the power of the defendant to explain that the procedure might not be completely successful, it should make no difference that the plaintiff approached the defendant rather than vice versa.