Lopez, J.
Plaintiff Seraphin Occean (“Occean”) brought this action against defendant Marriott Corporation (“Marriott”) for breach of a settlement agreement. On August 5, 1994, this court (per Sosman, J.) granted partial summary judgment in favor of Occean on the issue of Marriott’s liability for breach of contract. This trial was juiy-waived, and limited to the issue of damages.
Having heard such oral testimony as the parties chose to introduce; examined their exhibits; heard oral argument; and considered written submissions, I make the following findings, based on the credible evidence and the reasonable inferences to be drawn therefrom. Except where otherwise specified, I make each of these findings by a preponderance of the credible evidence.
FINDINGS OF FACT
Occean was employed by Marriott as an executive chef starting in 1976. In 1988, he was assigned to the Harvard Business School. In 1989, Occean was terminated and brought suit against Marriott alleging discrimination. Occean also filed a separate action against Harvard University and others.
Shortly before trial, Occean and Marriott agreed to settle their dispute. On September 26, 1990, Marriott’s counsel sent Occean’s counsel a letter confirming the settlement terms. Under the parties’ agreement, Occean was to receive $50,000 and was to be reemployed by Marriott, releases were to be signed, and Occean’s claims were to be dismissed. With regard to Occean’s reemployment, the letter stated the following;
Effective October 15, 1990, Marriott will reemploy Seraphin Occean (Occean) as an executive chef at the IBM/Marriott faciliiy in Palisades, New York at a salary of $769.23 per week ($40,000 per year) plus benefits.
Occean will accept the first available executive chef, or comparable position with Marriott, at no less than $769.23 per week, within 50 miles of Newton, MA.
During his assignment at Palisades, Marriott will provide room and board for Occean at Palisades and reimburse him at the rate of 26 cents per mile, plus tolls, for one round-trip per week by automobile to Newton, MA.
The letter further stated that Marriott’s counsel would prepare and forward the “closing papers” the following week.
At the time this agreement was reached, Occean and his family lived in Newton, Massachusetts. Occean’s children attended Newton public schools. Marriott knew that Occean did not want to relocate his family, and that he wanted to work at a faciliiy close to them.
Pursuant to the settlement agreement, Occean reported for work at the IBM/Marriott faciliiy on October 15,1990. He was then told that there was no executive chef position available there. Occean was then sent to another faciliiy approximately 200 miles away, in breach of the agreement, but there was no position there either. Marriott then gave Occean several brief assignments (one to two days) at different locations. On October 30, 1990, he was assigned to a Marriott faciliiy in Hopewell, New Jersey.
Meanwhile, on October 22,1990, Marriott’s counsel sent Occean’s counsel a set of documents to be signed by Occean which included a Settlement Agreement and Release of All Claims. This agreement included material alterations to substantive terms of the original agreement of September 26, 1990. Specifically, Marriott included an option to assign Occean to Palisades “or other interim assignment.”
On November 19,1990, when no signed documents had been returned, Marriott’s counsel sent a telegram to Occean’s counsel stating that the settlement offer and confirmation had been withdrawn by Marriott “due to changed financial circumstances and your clients’ failure to execute the settlement agreement.” Marriott proceeded to make various new proposals, including one which would reemploy Occean at Marriott’s Duke University conference center in Durham, North Carolina. Occean did not agree to any of these proposals, and demanded that Marriott comply with the original settlement agreement.
On January 4, 1991, Marriott terminated Occean by letter. I find that the corporate payroll records clearly indicate that he was paid through January 7, 1991. At the time of his discharge, Occean was earning $40,000 per year ($769.23 per week).
On January 7, 1991, Occean was not participating in any Marriott employee benefit plan, as he had declined an offer to enroll made in October of 1990.
I find that Marriott’s targeted annual average merit salary increase for managers during the relevant time period was 5 percent in 1991, 5 percent in 1992, 4.5 percent in 1993, and 3.5 percent in 1994. Occean had received regular merit increases in the past. This permits the inference, which I make, that Occean would have received merit increases in the years 1991 to 1994. Future increases would have been received on or about June 20 of each year.
After his termination from Marriott, I find that Occean made reasonable and considerable efforts to obtain similar work, up until February of 1994, when he became convinced his efforts were futile. During this same time period he also worked as a taxi driver. From January of 1991 to March 31, 1994, Occean leased a taxi cab from Holden’s Taxi, Inc. in Newton Center, Massachusetts. Occean’s total earnings, excluding tips, was $50,556.49. Occean testified that he received some income in tips from taxi fares, but he *630 did not keep records of his receipts. This permits the inference, which I make, that Occean received 10% in tips, totalling $5,055.65.
Since March 1994, Occean has been employed by Veteran’s Taxi Co., Inc. in Newton, Massachusetts. His total earnings through August 6,1994, excluding tips, totalled $11,706.29. Occean testified, and I find, that he received an additional $2,000 in tips while working for Veteran’s Taxi Co., Inc.
Occean credibly testified that he works long hours in his taxi, starting at 4:30 a.m. and working until 6:00 p.m. He has also supplemented his income by working odd jobs when he could find them, such as cutting grass or shovelling snow.
In the period of time since his termination, Occean credibly testified that he has suffered considerable emotional distress. His financial situation has steadily deteriorated. Creditors constantly call him, and his home was threatened with foreclosure. He has trouble sleeping, has lost weight, and has consulted a doctor for a nervous condition. He has also suffered considerable distress over the impact of his situation on his wife and children. One of his daughters has had to take time off from Connecticut College due to Occean’s financial constraints.
Occean testified that he was forced to borrow money, with interest, from various friends and family members. However, I find that Occean failed to prove any such loss.
In conclusion, the parties have jointly stipulated that Occean has not received the $50,000 cash portion of his settlement, and I so find.
RULINGS OF LAW
The general rule for breach of contract damages is that “the aggrieved party should be put in as good a position as if the other party had fully performed.” Laurin v. DeCarolis Constr. Co., Inc., 372 Mass. 688, 691 (1977). The goal is to protect the reasonable and foreseeable expectations of the non-breaching party. See International Totalizing Sys., Inc. v. PepsiCo, Inc., 29 Mass.App.Ct. 424, 430 (1990), rev. den., 408 Mass. 1105 (1990).
Both general and special damages are recoverable in contract actions. General damages are those damages which “flow according to common understanding as the natural and probable consequences of the breach.” Boylston Hous. Corp. v. O’Toole, 321 Mass. 538, 562-63 (1947). Special or consequential damages are further losses that “ ‘may be presumed to be in the contemplation of the parties at the time the contract was made’ by reason of special circumstances known to the parties.” Id. at 563.
Due to Marriott’s breach of the settlement agreement, Occean is entitled to the following damages:
1. Reinstatement
Occean is entitled to reinstatement, according to the express terms of the contract, to the first available executive chef position, or comparable position with Marriott, within 50 miles of Newton, Massachusetts. Until such time as he is reinstated, he is entitled to his full salary ($917.25 per week), to include the projected merit increases as discussed below.
2. Back Pay and Fringe Benefits
Occean is also entitled to lost wages. The measure of damages recoverable for breach of an employment contract is “the wages [the employee] would have earned under the contract less what he did in fact earn or in the exercise of proper diligence might have earned in another employment." Dickson v. Riverside Iron Works, Inc., 6 Mass.App.Ct. 53 (1978). The employee is obligated to mitigate damages, but the burden is on the employer to prove that the employee failed to do so. Black v. School Comm. of Malden, 369 Mass. 657, 661-62 (1976). Marriott can meet its burden by proving that “(a) one or more discoverable opportunities for comparable employment were available in a location as convenient as, or more convenient than, the place of former employment, (b) the improperly discharged employee unreasonably made no attempt to apply for any such job, and (c) it was reasonably likely that the former employee would obtain one of those comparable jobs.” Id. at 661-62 (emphasis added).
Marriott has argued that Occean should not be allowed to recover back pay because he allegedly breached his duly to mitigate by not accepting the position at Duke University. However, Occean’s obligation to mitigate did not extend to accepting a position hundreds of miles from his home. Declining an offer of reinstatement is not a failure to mitigate if burdensome conditions are attached to the employment offer. Sherman v. School Comm. of Whitman, 26 Mass.App.Ct. 903 (1988).
Occean is entitled to the wages he would have earned under the contract, reduced by his interim earnings since leaving Marriott’s employment. The evidence supports the following findings:
Lost wages
01/07/91-06/24/91 (24 weeks) at $769.23 = $ 18,461.52
06/24/91-06/22/92 (52 weeks) at $807.69 = 41,999.88
06/22/92-06/21/93 (52 weeks) at $848.07 = 44,099.64
06/21/93-06/20/94 (52 weeks) at $886.23 = 46,083.96
06/20/94-09/05/94 (11 weeks) at $917.25 = 10.089.75
Total: $160,734.75
Interim earnings
Holden’s Taxi, Inc. 1991-1994 $50,556.49
Tips (10%) $5,055.65
Veteran’s Taxi Co. through *631 08/06/94 $11,706.29
Tips $ 2.000.00
Total: $69,318.43
Lost Wages: $160,734.75
Interim Earnings: -69.318.43
$91,416.32
Counsel for the plaintiff and defendant are to confer and attempt to reach a stipulation as to the amount recoverable by the plaintiff from September 5, 1994 until the date of this order, reduced by interim earnings since August 6, 1994. If such an attempt is unsuccessful, the matter will be referred to mediation.
We need not reach the issue of whether Occean is entitled to be reimbursed for lost medical or dental benefits because, at the time of his termination, he was not enrolled in any employee benefit plans.
3.Reimbursement for Travel
Occean is entitled, pursuant to the express terms of the settlement agreement, to reimbursement for travel expenses from October 15, 1990 until January 7, 1991. The parties have presented conflicting evidence as to whether Occean properly completed reimbursement requests, however, that debate is immaterial. The contract expressly provides for reimbursement of these expenses, therefore they are recoverable damages in the event of breach. As there is insufficient evidence to support a specific finding as to the mileage and tolls, the court requests that the parties confer and attempt to reach a stipulation as to the amount recoverable by the plaintiff. If such an attempt is unsuccessful, the matter will be referred to mediation.
4.Attorneys Fees and Costs
Occean is seeking attorneys fees in both this suit, and in his separate action against Harvard University. As a general rule, attorneys fees are not recoverable as an element of damages, except where authorized by statute. See Chartrand v. Riley, 354 Mass. 242 (1968); Lilley v. Rich, 27 Mass.App.Ct. 1212 (1989), rev. den., 406 Mass. 1104 (1990). The Supreme Judicial Court has recognized a narrow exception to this rule when the natural consequence of a defendant’s tortious conduct requires a victim “to sue or defend against a third party in order to protect his rights.” M.F. Roach Co. v. Provincetown, 355 Mass. 731, 732 (1969) (emphasis added). See also Mutual Fire, Marine & Inland Ins. Co. v. Costa, 789 F.2d 83 (1st Cir. 1986).
Occean is clearly not entitled to recover attorneys fees for this action. Furthermore, he is not entitled to attorneys fees in his suit against Harvard because the exception delineated in M.F. Roach Co. is wholly inapplicable to the present case. This is an action in contract, not tort. Furthermore, Occean was not compelled to sue Harvard to protect his rights.
5.Contractual Distress
Recovery for mental distress from breach of contract is generally not permitted. Sackett v. St. Mary’s Church Soc., 18 Mass.App.Ct. 186 (1984), rev. den., 393 Mass. 1102 (1985). However, in the event of a special relationship between the contracting parties, such as innkeeper and guest, or common carrier and passenger, such damages may be recoverable. See McClean v. Univ. Club, 327 Mass. 68 (1951) (guest removed from room despite request for medical attention entitled to recover in contract as fully as if he sued in tort); Frewen v. Page, 238 Mass. 499 (1921). In these cases, the acts which constituted the breach were intentional, rather than negligent. Similarly, I find that Marriott intentionally breached the contract with Oc-cean.
Furthermore, our courts have recognized that compensatory damages for emotional distress may be recoverable for breach of contract where the contract is such that emotional distress is a reasonably foreseeable consequence of its breach. See Sullivan v. O’Connor, 363 Mass. 579 (1973) (plaintiff awarded damages for emotional distress as well as out-of-pocket expenses in breach of contract action against physician). In Sullivan, the Supreme Judicial Court stated that “there is no general rule barring [recovery for mental distress] for breach of contract. It is all a question of the subject matter and background of the contract.” Id. at 587.
Emotional distress damages are particularly appropriate in this case precisely because of the subject matter and background of this contract. This agreement represented the settlement of a discrimination claim, and was essentially an employment contract with assurances to employ Occean at a specific site, for a specific salary. Marriott knew that Occean wanted to be assigned to a facility close to his family. It was certainly foreseeable to Marriott that breach of that agreement would result in emotional distress to Occean.
Moreover, there are important public policy considerations at stake which provide further reasons to award damages for emotional distress in this case. When Occean entered into the settlement agreement with Marriott, he relinquished all rights to pursue his discrimination claims. Had he pursued those claims, he would have been entitled to seek a wide range of damages, including emotional distress and attorneys fees. By restricting Occean to traditional contract damages, this Court effectively would be encouraging employers faced with discrimination suits to settle, and subsequently breach those settlement agreements, as a means to limit liability. Such a result would undermine the underlying purposes for heightened damages in discrimination cases.
The foregoing reasons justify the awarding of emotional distress damages in a case where an employer breaches an agreement made to settle a discrimination claim. I find that Occean is entitled to recover $100,000 for emotional distress.
*632 6. Punitive Damages
The plaintiff has argued that punitive damages are also appropriate in light of the fact that they are recoverable under G.L.c. 151B, §9. However, punitive damages are not recoverable in this case as they are not provided for under particular statutory authority. See Flesner v. Technical Communications Corp., 410 Mass. 805 (1991). Furthermore, the amendment to G.L.c. 151B, §9 allowing punitive damages became effective January 13,1990, after Occean’s termination in May of 1989. The Supreme Judicial Court has clearly held that these new provisions increasing damages may not be applied to conduct occurring prior to their effective date. See Fontaine v. Ebtec Corp., 415 Mass. 309, 318 (1993). Since Occean would not have been entitled to recover punitive damages had he pursued his original claims, it would be inappropriate to consider awarding such damages upon breach of the settlement agreement.
7. Cash Settlement
Occean is entitled to recover the $50,000 cash payment, pursuant to the terms of the contract.
ORDER
For the foregoing reasons, it is hereby ORDERED that judgment enter for plaintiff in the amount of two hundred and forty-one thousand four hundred and sixteen dollars and thirty-two cents ($241,416.32), plus interest and costs as provided by law, against defendant Marriott. A further order will follow regarding the undetermined supplemental wages and travel reimbursement due the plaintiff. The parties are ORDERED to provide the court with this information within 30 days of this order.