GLATIDE ST. CHARLES vs. WINIFRED KENDER.[1]

No. 94-P-153.

Middlesex. October 19, 1994. - February 17, 1995.

Present: KASS, KAPLAN, & PORADA, JJ.

*Health Maintenance Organization. Contract*, Parties, Third party beneficiary, Performance and breach, Emotional distress. *Damages*, Emotional distress. *Emotional Distress. Doctor*, Failure to return telephone call.

A subscriber to a health maintenance organization may maintain a claim based on the contract between the organization and the subscriber's designated physician, where the subscriber is an intended beneficiary of the contract. [157-158]

Discussion of cases considering the recovery of damages in actions in which the injury alleged is emotional distress. [159-160]

In an action for negligent infliction of emotional distress, the defendant's motion for summary judgment was correctly granted, where the plaintiff neither alleged nor proved a physical injury related to the conduct of the defendant. [160]

In an action for breach of contract brought by a subscriber to a health maintenance organization for her designated physician's failure to have returned her phone calls over a period of two days during which the subscriber was suffering a miscarriage, the plaintiff did not establish that she was entitled to damages for emotional distress, in circumstances where she neither alleged nor proved any physical injury resulting from the breach; the judge correctly entered summary judgment for the defendant physician. [160-161]

CIVIL ACTION commenced in the Superior Court Department on September 11, 1990.

The case was heard by *Elizabeth Butler*, J., on a motion for summary judgment.

[1]The action named Tufts New England Health Maintenance Organization (Tufts HMO) as a defendant. The claim against Tufts HMO was settled, and the complaint against it was dismissed. The proper name of Tufts HMO, as it appears on the stipulation of dismissal, is Tufts Associated Health Maintenance Organization, Inc.

*Alanna G. Cline* for the plaintiff.

*Steven M. O'Brien* for the defendant.

KASS, J. Upon a motion for summary judgment, a judge of the Superior Court ruled that the defendant Winifred Kender, a primary care physician under contract with Tufts New England Health Maintenance Organization (Tufts HMO), was not contractually liable to a patient for failing (as the complaint alleged) to return telephone calls of a patient over a period of two days. That patient, it developed, was suffering a miscarriage. The judge also decided that Dr. Kender was not liable for negligent infliction of emotional distress. Although we decide that the summary judgment materials left open questions of fact bearing on whether a breach of contract had occurred, we affirm the economic elements of the judgment.

In summary, these are the pertinent facts assumed by the parties for purposes of summary judgment. St. Charles had signed up with Tufts HMO in March, 1987. Dr. Kender became her primary care physician by designation.[2] In July, 1987, St. Charles thought she had become pregnant and called Dr. Kender's office by telephone for an appointment and for referral to an obstetrician-gynecologist. A gatekeeper who answered for Dr. Kender scheduled a first appointment for St. Charles with Dr. Kender on September 23, 1987. Before that date, on September 13 and 14, 1987, St. Charles began to bleed and experienced pain. Over those two days she made repeated calls to Dr. Kender's office to report her acute distress and did not receive a call back, either from Dr. Kender or someone covering for Dr. Kender.

Around mid-day of September 14, St. Charles travelled by cab to Boston City Hospital, where she was diagnosed as having suffered an incomplete spontaneous abortion, i.e., a miscarriage. She was treated with dilation and curettage. St. Charles brought an action against Dr. Kender claiming

---

[2]It is not clear from the record whether Tufts HMO designated Dr. Kender as the primary care physician for St. Charles, or whether the latter made the choice. The Tufts HMO Member Handbook, "encourages each member to choose a Personal Care Physician upon enrollment in the plan."

breach of contract and negligent infliction of emotional distress.[3]

1. *Third-party liability on the contract between the physician and the HMO.* Under her contract with Tufts HMO,[4] Dr. Kender undertook

> "[t]o provide [h]ealth [s]ervices for IPA members in [a] manner consistent with professional standards of medical care generally accepted in the medical community at the time."

There is a threshold question whether a subscriber to a health maintenance organization may maintain a claim based on the contract between the organization and the physician. Putting the question another way: is the subscriber an intended third-party beneficiary of those provisions of the contract which describe the nature of the medical services that the physician is to provide? Among the documents in the record appendix is the handbook issued to persons who enroll in the Tufts HMO. What the HMO provides to a member, it is apparent from that document, is a package of medical services from a roster of approved physicians and health insurance to pay for those services. Providing medical services to plan members, the contractual obligation Dr. Kender (as promisor) assumed in relation to Tufts HMO (as promisee), discharges the obligation of Tufts HMO to St. Charles, the plan member and patient. St. Charles, therefore, is an intended beneficiary of the contract between Tufts HMO and Dr. Kender, and St. Charles may maintain her action. See *Choate, Hall & Stewart* v. *SCA Serv., Inc.,* 378 Mass. 535, 546 (1979); *Flattery* v. *Gregory,* 397 Mass. 143, 149 (1986); Restatement (Second) of Contracts § 304

---

[3]The plaintiff moved to amend her complaint to add a count for intentional infliction of emotional distress, but was not permitted by the court so to do.

[4]We have simplified the contractual arrangement. The contract which Dr. Kender entered into was with Carney Hospital-St. Margaret's Hospital I.P.A., Inc., which in turn arranged to provide a roster of physicians who would provide services for subscribers to Tufts HMO. The letters I.P.A. stand for independent practice association.

(1979). Compare *Massachusetts Hous. Fin. Agency* v. *Whitney House Assocs.*, 37 Mass. App. Ct. 238, 242-243 (1994).

2. *Whether a breach of contract occurred.* St. Charles does not make a medical malpractice claim. Rather, the first of the plaintiff's two theories of liability is that Dr. Kender undertook to render services and, when called upon so to do, rendered none. The Superior Court judge who acted on the motion for summary judgment thought this aspect of the action failed because the plaintiff had adduced no evidence from an expert that a two-day delay in returning a patient's telephone call in the circumstances (i.e., a telephone call from a patient whom the physician had never seen before) was inconsistent "with professional standards of medical care generally accepted in the medical community at the time."

To be sure, literal application of the contractual standard requires knowing what the medical community accepted as a response standard in 1987, but we incline to the view that finding whether a two-day delay is an unreasonable time to get back to a patient is the sort of task that a jury may be expected to discharge without the help of an expert. There is a common sense aspect to the question. See and compare *Haggerty* v. *McCarthy*, 344 Mass. 136, 139 (1962). Moreover, there was in the record the Tufts HMO handbook that said, "Occasionally, a situation may arise in which your Personal Care Physician has not returned your call within a reasonable length of time (1-2 hours). If this occurs, call TAHP telephone number . . . and a plan administrator will be available on call to assist you in obtaining health care." That definition of reasonable response time as one to two hours is some evidence of an applicable professional standard, especially if matched against two days.[5] There was, therefore, a basis for a judge or jury to find that Dr. Kender had committed a breach of contract, and, for the balance of our analysis,

---

[5] St. Charles failed to follow the instruction to call Tufts HMO, but that failure does not conclusively absolve a plan physician from making a contractually sufficient response, although it might bear on the damages, if any.

we will assume such a finding. There is no need for further proceedings, however, unless St. Charles could prove that she suffered actual damages by reason of the physician's breach of contract.

3. *Damages based on emotional distress.* What St. Charles alleges as injury is emotional distress, a form of harm for which damages are not easily recoverable in an action founded on a contract in the absence of physical harm. *McClean* v. *University Club*, 327 Mass. 68, 76 (1951)(states the *general* rule that mental suffering resulting from a breach of contract is not a subject of compensation). Restatement (Second) of Contracts § 353 (1979). 5 Corbin on Contracts § 1076, at 426-427 (1964). So, for example, the apparel retailer who has not received the winter line on time cannot add heartache as an item of damage. If, however, the breach of contract is of a nature particularly likely to produce emotional distress, damages for that emotional distress may be recovered. Restatement (Second) of Contracts § 353. Of this category, an example would be contracting to film persons for a television program upon a promise of protecting the privacy of those persons by not showing their faces and breaking that agreement by broadcasting identifiable front face footage. See *Huskey* v. *National Bdcst. Co.*, 632 F. Supp. 1282, 1292-1293 (N.D. Ill. 1986); 5 Corbin on Contracts § 1076, at 174 (Supp. 1994).

Close to the problem before us is *Sullivan* v. *O'Connor*, 363 Mass. 579 (1973), in which a surgical procedure to improve a nose made the nose uglier instead of beautiful. In considering whether psychological damages ought to be recoverable in the case of a breach of contract for medical services, the court wrote that "[i]t [was] all a question of the subject matter and background of the contract." *Id.* at 587. If, as was the case in *Sullivan* v. *O'Connor*, the purpose of the operation was to allay the plaintiff's displeasure with the nose nature had given her and to provide the joy of a better one, then psychological consequence might be thought to be inherent in the particular medical contract, viz., a better

nose. Damages for mental distress, in the circumstances, were recoverable.

Similarly, in *Stewart* v. *Rudner*, 349 Mich. 459, 469-473 (1957), the agreement alleged was that the physician with whom the plaintiffs had contracted would deliver their child by Caesarean section. The parents so desired because two previous pregnancies had ended in stillbirths, and the parents believed that the stress of normal vaginal delivery had contributed to those tragic outcomes. The defendant failed to perform a Caesarean section, allowed the patient to go through normal labor and, indeed, the third baby was stillborn. The court considered the anguish of the parents to be precisely what the contract alleged had been designed to avert and allowed recovery for emotional distress.

Recovery on a reliance basis for breach of a physician's promise, the court observed in the *Sullivan* case, "tends to equate with the usual recovery for malpractice," a tort action. *Sullivan* v. *O'Connor*, 363 Mass. at 588 n.6. It is an observation aptly illustrated by the *Sullivan* and *Stewart* decisions. In each of those cases the basis of the recoverable damages for emotional distress of the plaintiffs was the physical harm that the patient had suffered. In order to recover under the tort theory of negligent infliction of emotional distress, the alternative theory pressed by St. Charles, the plaintiff must have suffered some physical harm. *Payton* v. *Abbott Labs*, 386 Mass. 540, 545-547 (1982).

To establish a link of causation between the unreturned telephone calls and the physical harm St. Charles suffered, the miscarriage, would require evidence from an expert. None was offered and, indeed, St. Charles does not claim that the delay in response caused her miscarriage. That defeats the tort count in the complaint. In the absence of any physical injury related to what Dr. Kender is said not to have done, we are of opinion that in circumstances such as these, a claim founded on a contract theory for damages arising from emotional distress also does not succeed. Even in so personal a matter as medical attention, the place of large organizations and communication by telephone or other electronic

means (telephone, fax, computer networks) grows in prominence. The opportunities for failures or muddles in response grow alongside. When physical injury results, the promisor may fairly be held to anticipate related emotional suffering. When no physical injury results and the facts are devoid of harmful intent, emotional distress is best written off as among the shocks and counter shocks of life which the law does not seek to remedy.

On the tort count, summary judgment was rightly allowed and that portion of the summary judgment is affirmed. As to the contract action, a breach could be found but without actual damages. In such a case, the plaintiff is entitled to symbolic nominal damages, *King Features Syndicate* v. *Cape Cod Bdcst. Co.*, 317 Mass. 652, 655 (1945),[6] but "no useful purpose would be served by remanding the matter for such an award." *Giannasca* v. *Everett Aluminum, Inc.*, 13 Mass. App. Ct. 208, 213 (1982). It would be an imposition on the parties to consign them to further exertions in Superior Court from which the plaintiff could expect to recover no more than one dollar in damages. We, therefore, affirm dismissal of the contract count of the complaint as well unless, within thirty days of the issuance of the rescript, the plaintiff files a notice in Superior Court that she desires an adjudication of the abstract question whether Dr. Kender committed a breach of her contract with Tufts HMO entitling her to nominal damages; in which event the case shall be remanded to the Superior Court for that limited purpose.

*So ordered.*

---

[6]See also *Rambola* v. *Cosindas*, 351 Mass. 382, 384 (1966); *Davidson Pipe Supply Co.* v. *Johnson*, 14 Mass. App. Ct. 518, 520 (1982); Restatement (Second) of Contracts § 346 (1979).