**FINANCE AUTHORITY OF MAINE, et al., Plaintiffs,**

v.

**The L.L. KNICKERBOCKER CO., INC., Defendant.**

**Civil Action No. 98–225–B.**

United States District Court, D. Maine.

June 3, 1999.

---

**3.** No record was made of the colloquy with the administrative judge.

Martha C. Gaythwaite, Friedman, Babcock & Gaythwaite, Portland, ME, for Plaintiffs.

Jeffrey T. Edwards, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, ME, Michael Roitman, McGowan, Engel, Tucker & Shultz, Boston, MA, for Defendant.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

This contract action is brought by Plaintiffs Finance Authority of Maine, Coastal Enterprises, Inc., and Southern Maine Economic Development District ("Plaintiffs") against Defendant The L.L. Knickerbocker Co., Inc. ("Defendant"). Plaintiffs assert that Defendant breached a Registration Agreement (Counts I–III) and a Purchase Agreement and Shareholders' Agreement (Count IV) related to Defendant's purchase of stock of certain companies to which Plaintiffs had made substantial loans. Plaintiffs seek damages for the breach of all three agreements and specific performance of the Registration Agreement, as well as attorney's fees and costs. Before the Court is Plaintiffs' Mo-

tion for Summary Judgment on all Counts of their Complaint and Plaintiffs' Motion to Strike Portion of Defendant's Response to Plaintiffs' Motion for Summary Judgment. For the reasons set forth below, Plaintiffs' Motion for Summary Judgment on all Counts of their Complaint is GRANTED IN PART and DENIED IN PART, and summary judgment is GRANTED IN PART in favor of Defendant on the Court's own motion. Plaintiffs' Motion to Strike is GRANTED.

## I. BACKGROUND

The underlying facts in this case, while somewhat complex, are largely undisputed. Plaintiffs, non-profit lenders, entered into several loan agreements with Georgetown Collection, Inc. ("Georgetown") and Magic Attic Press, Inc. ("Magic") on June 14, 1996.[1] At that time, 100% of the preferred stock of Georgetown and Magic was owned, in the aggregate, by various venture capital groups ("Shareholders").[2] Promissory notes executed by Georgetown and delivered to Plaintiffs reflect a principal loan amount of $1,000,000.00. The Shareholders, with the exception of one, executed Limited Guaranty and Stock Pledge Agreements in favor of Plaintiffs whereby each guaranteed the full and punctual repayment to Plaintiffs. In addition, all the Shareholders granted Plaintiffs a security interest in all Georgetown and Magic Attic Stock.

In the fall of 1996, Defendant acquired a controlling interest in Georgetown and Magic by purchasing all Georgetown stock owned by the Shareholders pursuant to an Agreement of Purchase and Sale ("Purchase Agreement") executed by Defendant and the Shareholders.[3] Section 1.2 of the Purchase Agreement fixed the purchase price of the Georgetown stock at $1,679,011.18 and provided that Defendant was to pay more than half of the purchase price in shares of Defendant's own stock ("LLK shares"). The Purchase Agreement also provided in Section 1.2.4 that if the stock declined in value, Defendant would pay to the Shareholders a Guaranty Payment equal to the difference between the purchase price of the LLK shares as defined in the Purchase Agreement and the value of LLK shares one year subsequent to the closing date. Defendant made a Guaranty Payment to the Shareholders in the form of 12,447 shares of LLK stock on January 29, 1999.

In connection with its purchase of the Georgetown stock, Defendant entered into a Settlement Agreement ("Settlement Agreement") with Georgetown, Magic, and Plaintiffs dated November 27, 1996. As of that date, the total debt due Plaintiffs based on its loans to Georgetown and Magic was $1,022,906.19 as set forth in Section 1(a) of the Settlement Agreement. In partial satisfaction of this debt and pursuant to Section 7 of the Settlement Agreement, Defendant transferred to Plaintiffs $500,000.00 in cash.[4]

Also on November 27, 1996, in connection with the purchase of the Georgetown stock, Plaintiffs and the Shareholders executed a Shareholders' Settlement Agreement and Release of Limited Guaranties ("Shareholders' Agreement"). Under the

---

1. Magic was wholly owned by Georgetown.

2. The Shareholders were North Atlantic Venture Fund, L.P., Vermont Venture Capital Fund, L.P., Consumer Venture Partners I, L.P., Merchant Partners, Limit Partnership, and New Enterprise Associates IV, Limited Partnership.

3. By November of 1996, Georgetown and Magic were in default of their obligations under the Promissory Notes.

4. In their briefs, both Plaintiffs and Defendant assert that $500,000.00 was transferred to Plaintiffs by Shareholders. After an examination of the Settlement Agreement and the Shareholders' Settlement Agreement and Release of Limited Guaranties, as well as the affidavit testimony of William Black, Esq., (Black Aff. ¶ 14, 19), and Howard Rosenblum, Esq., (Rosenblum Aff. ¶ 13), however, it appears that the cash was transferred to Plaintiffs by Defendant under Section 7 of the Settlement Agreement.

Shareholders' Agreement, Plaintiffs agreed to release the Georgetown stock, which had been pledged to Plaintiffs by the Shareholders, to enable the Shareholders to transfer the Georgetown stock to Defendant in exchange for shares of Defendant's stock cash as provided in the Purchase Agreement.[5] In consideration for Plaintiffs' release of the Georgetown stock and in satisfaction of the debt owed by Georgetown and Magic, the Shareholders transferred to Plaintiffs, pursuant to Section 8 of the Shareholders' Agreement and Schedule B attached thereto, approximately 61,159 shares of the LLK stock received from Defendant for the sale of the Georgetown stock under the terms of the Purchase Agreement. The Shareholders' Agreement also provided that within three business days following the receipt by the Shareholders of a Guaranty Payment under the Purchase Agreement, the Shareholders would transfer 31.14% of that Payment to Plaintiffs.

A Registration Agreement executed by Defendant on November 27, 1996 provided that Defendant would register with the Securities and Exchange Commission ("SEC") all shares of LLK stock transferred to the Shareholders under the Purchase Agreement, including the shares transferred in turn by the Shareholders to Plaintiffs pursuant to the Shareholders' Agreement. Specifically, the Registration Agreement provided that Defendant would register the shares "as soon as practicable" using its "best efforts," but no later than 365 days from the date of the Registration Agreement. The Registration Agreement also specified that in the event that Defendant failed to register the shares within 365 days, it would indemnify holders of those shares for any diminution in value of the shares which occurred between the 365th day and the date of sale ("Indemnity Clause"). The parties disagree as to the price of an LLK share on

the 365th day after the date of the Registration Agreement: Plaintiffs claim LLK stock was trading at $7.2375 per share; Defendant alleges that the price was $7.14 per share.

To date, Defendant has not registered the LLK shares with the SEC. Defendant points out, however, and Plaintiffs concede, that SEC Rule 144, 17 C.F.R. § 230.144 (1998) ("SEC Rule 144") provides for the sale of unregistered stock to the public one year after it is transferred. Plaintiffs have yet to sell their shares of LLK stock.

Aside from the value of the LLK shares 365 days after the date of the Registration Agreement, the only factual dispute concerns the closing date of the Purchase Agreement, and consequent value of the LLK shares. Plaintiffs argue that the closing date is October 19, 1999 as reflected in Section 2.3 of the Purchase Agreement which reads, "[t]he Closing of the transaction contemplated by this Agreement shall take place ... on November 15, 1996 or at such other date, time and place as may be agreed upon by the parties, and shall for all purposes be deemed consummated as of October 19, 1996 (the 'Closing Date')." The value of the LLK shares on October 19, 1996, as provided by Section 1.2 of the Purchase Agreement, was $11.50 per share. Defendant claims that it and the Shareholders orally modified the Closing date to November 27, 1996 and that the price per share on that date was $8.55.

## II. SUMMARY JUDGEMENT

Summary judgment is appropriate in the absence of a genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,

---

5. Under the Shareholders' Agreement, Plaintiffs also released the Shareholders from the

Limited Guaranties.

**48**

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Ti-rado–Delgado,* 990 F.2d 701, 703 (1st Cir. 1993). Facts may be drawn from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed.R.Civ.P. 56(c). For the purposes of summary judgment the Court views the record in the light most favorable to the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995).

## III. DISCUSSION

### A. Plaintiffs' Motion for Summary Judgment

In Count IV of their Complaint, Plaintiffs assert that Defendant breached the Purchase Agreement, of which they are third party beneficiaries, by failing to make the Guaranty Payment to the Shareholders until January 29, 1999.[6] Plaintiffs also claim that Defendant breached the terms of the Registration Agreement by failing to register the LLK shares within 365 days of the closing date of the Registration Agreement and by failing to indemnify Plaintiffs for the dimunition in the value of the LLK shares from the 365th day after the date of the Registration Agreement to the present.

Before taking up Plaintiffs' arguments, the Court notes that it will apply Massachusetts law to this dispute since both the Purchase Agreement and the Registration Agreement contain choice-of-law provisions specifying Massachusetts law and the parties agree that Maine's choice of law rules give effect to these provisions.

### 1. Purchase Agreement

In response to Plaintiffs' claim of breach, Defendant argues that Plaintiffs have no standing to sue because they are neither parties to, nor intended third party beneficiaries of, the Purchase Agreement, and that, in any event, it did not breach the Agreement by making the Guaranty Payment to the Shareholders on January 29, 1999.

■ Persons who are not parties to a contract nevertheless may sue for breach if they qualify as intended third party beneficiaries of the contract. *See Rae v. Air-Speed, Inc.,* 386 Mass. 187, 435 N.E.2d 628, 632–33 (1982). In determining whether a third party is an intended third party beneficiary, Massachusetts looks to the Restatement (Second) of Contracts § 302. *See id.* (adopting Restatement (Second) of Contracts § 302).[7] Under Section 302, the intention of the contracting parties distinguishes those beneficiaries who have standing to sue from so-called incidental beneficiaries who, while they may derive benefit from the performance of the contract, are not entitled to sue for its breach. When evaluating the intent of the parties, a court must consider both the language of the contract as well as the surrounding facts and circumstances. *See Anderson v. Fox Hill Village Homeowners Corp.,* 424 Mass. 365, 676 N.E.2d 821, 822 (1997) (ex-

6. In addition to asserting a claim for breach of the Purchase Agreement, Count IV also asserts a claim for breach of the Shareholders' Agreement. Defendant is not a party to the Shareholders' Agreement, however, and consequently cannot be liable for its breach. The Court therefore grants summary judgment in favor of Defendant as to Count IV to the extent that it asserts a claim for breach of the Shareholders' Agreement.

7. Section 302 provides:
(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a prom-

ise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.
Restatement (Second) of Contracts § 302 (1981).

amining "the language and circumstances of the contract").[8]

■ Plaintiffs maintain that they are intended third party beneficiaries of the Purchase Agreement. In support of their position, Plaintiffs argue that the Purchase Agreement (including its Guaranty Payment provision), along with the Settlement Agreement, the Shareholders Agreement, and the Registration Agreement, was part of a comprehensive deal for the purchase and sale of the Georgetown stock, and that as holders of a prior security interest in the stock, Plaintiffs were acknowledged, integral, and therefore, intended beneficiaries of the deal.[9]

■ The Court finds, as Plaintiffs claim, that their role in the deal between Defendant and the Shareholders was contemplated from the deal's inception. The mere fact of Plaintiffs' involvement, however, is not conclusive evidence that "recognition of a right to performance [of the Purchase Agreement] in [Plaintiffs] is appropriate to effectuate the intention of the parties" to the Purchase Agreement. Restatement (Second) of Contracts § 302(1) (1981). Indeed, after a thorough examination of the Purchase Agreement, the surrounding circumstances, and applicable case law, the Court is satisfied that, as a matter of law, Plaintiffs are not intended third party beneficiaries of the Guaranty Payment provision of the Purchase Agreement.

Looking first to the Purchase Agreement, the Court observes that Paragraph 14.13 specifically addresses the rights of third parties. That paragraph provides:

> *Third Parties:* Except as specifically set forth or referred to herein, nothing herein expressed or implied is intended or shall be construed to confer upon or give to any person or corporation other than the parties hereto and their successors or assigns, any rights or remedies under or by reason of this Agreement.

(Purchase Agreement ¶ 14.13.) This provision is unambiguous and clearly reflects

---

8. Several commentators have observed that courts have encountered understandable difficulty applying Section 302. *See* Melvin Aron Eisenberg, *Third-Party Beneficiaries,* 92 Colum. L.Rev. 1358 (1992); Jean Fleming Powers, *Expanded Liability and the Intent Requirements in Third Party Beneficiary Contracts,* 1993 Utah L.Rev. 67 (1993); Kenneth J. Foster, Note, *Public Housing Tenants as Third-Party Beneficiaries: Considering Ayala v. Boston Housing Authority,* 27 New. Eng. L.Rev. 85–96 (1992). In particular, critics of Section 302 note that it provides minimal and even conflicting guidance as to whose intent is controlling, and that the meaning of the term "intent" is itself ambiguous. The result is that the standard is often applied in an inconsistent and conclusory fashion. *See* Eisenberg, *supra,* at 1381.

9. As evidence that they have standing to sue under the Purchase Agreement, Plaintiffs also point out that the Settlement Agreement to which they, Defendant, and the Shareholders are parties is incorporated by reference in the Purchase Agreement, and that the Settlement Agreement defines an event of default as a failure by Defendant to timely transfer stock to the Shareholders as required by the Purchase Agreement. Based on this evidence, Plaintiffs appear to argue that Defendant violated the Settlement Agreement to which Plaintiffs are parties by failing to make timely transfers of stock to the Shareholders, and that this violation of the Settlement Agreement constitutes a violation of the Purchase Agreement because the Purchase Agreement incorporates the Settlement Agreement.

The Court rejects this argument. Plaintiffs provide no support for the proposition that incorporation of a contract to which they are parties by a contract to which they are not parties affords them standing to sue on the incorporating contract. In other words, Plaintiffs have not shown that the intent of Defendant and the Shareholders to benefit Plaintiffs or recognize a right of performance in them can be inferred from the fact that Defendant and the Shareholders referred to the Settlement Agreement to define their own rights and obligations under the Purchase Agreement. Furthermore, Plaintiffs have not raised a genuine issue of material fact as to whether the Settlement Agreement's requirement that Defendant make timely transfers of stock applies to the Guaranty Payment provision of the Purchase Agreement, especially in light of the undisputed fact that this Provision allows for the Guaranty Payment to be made in either warrants, cash, or stock. (Purchase Agreement § 1.2.4.)

the intention of Defendant and the Shareholders to limit the rights to performance of the contract to themselves as parties to the Purchase Agreement.[10] *See* Restatement (Second) of Contracts § 302(1) (1981).

The Court is further persuaded by *Macksey v. Egan*, 36 Mass.App.Ct. 463, 633 N.E.2d 408 (1994), a case bearing a strong factual resemblance to the one at bar. The plaintiff in *Macksey* was an inactive director and significant shareholder of a small company. In default on a large bank loan, the company sought an infusion of capital from outside investors. *See id.* at 409. It contracted with investors to provide collateral for additional bank loans, one of which was to be used by the company to purchase the shares of inactive shareholders, including principally those of the plaintiff. *See id.* at 410. At the company's request, the plaintiff agreed to tender his shares in the company and resign his directorship. *See id.* He was not a party, however, to the investment agreement between the company and the investors. *See id.* Shortly after the company accepted the plaintiff's tender of shares, but before it obtained the loan to purchase the shares, the company retracted its tender offer. When the company eventually declared bankruptcy, the plaintiff filed an action against the investors for breach of the investment agreement between the company and the investors. *See id.* at 411.

Reversing the trial court's denial of the investors' motion for a judgment as a matter of law, the Court of Appeals held that the plaintiff had no standing to sue on the contract because he was not an intended third party beneficiary of the investment agreement. *See id.* The Court concluded that the plaintiff was no more than an incidental beneficiary of the investment agreement because the parties' objective in executing it was not to benefit the plaintiff. *See id.* at 412. Rather, the Court reasoned,

> [the company and the investors] were bargaining in their own interests to accomplish a planned reorganization: to secure a new loan for the company, to get inactive shareholders out of the way, and to put the control of the company in the hands of the fresh investors.

*Id.*

Similarly, in the present case, the objective of Defendant and the Shareholders in entering into the Purchase Agreement was to provide for the purchase and sale of the Georgetown stock, not to benefit Plaintiffs. Like the plaintiff in *Macksey* who was to have his shares purchased by the company, Plaintiffs here were closely involved with the transaction and stood to benefit if the terms of the Purchase Agreement were fulfilled by the parties to the Agreement. Also as in *Macksey*, however, the benefit to Plaintiffs in this case was "merely a means to the fulfilment of the parties' purpose or a foreseeable consequence of the fulfilment." *Id.*[11] Plaintiffs' attempt to

10. Plaintiffs do not argue that the Shareholders assigned them any right to the Guaranty Payment under the Purchase Agreement. Indeed, by seeking standing as third party beneficiaries, Plaintiffs implicitly acknowledge that they are not assignees.

11. Though not necessary to its decision, the Court notes that Plaintiffs do not meet the additional criteria of Section 302(1)(a) that "the performance of the promise to pay will satisfy an obligation of the promisee to pay money to the beneficiary." An accompanying illustration explains:

> B promises A to pay whatever debts A may incur in a certain undertaking. A in-

curs in the undertaking debts to C, D and E. If the promise is interpreted as a promise that B will pay C, D and E, they are intended beneficiaries under Subsection (1)(a); if the money is to be paid to A in order that he may be provided with money to pay C, D and E, they are at most incidental beneficiaries.

Restatement (Second) of Contracts § 302 cmt. b, illus. 3 (1981).

Even assuming that Defendant and the Shareholders agreed that the outstanding balance on Plaintiffs' loan to the Sharcholders was to be satisfied, in part, by means of the Guaranty Payment, Plaintiffs nevertheless would be incidental beneficiaries of the Pur-

distinguish *Macksey* by arguing that there would have been no transaction between Defendant and the Shareholders if Plaintiffs had not agreed to waive their security interest in the Georgetown stock is unpersuasive. In *Macksey*, the facts indicate that the investors would not have invested in the company unless the plaintiff agreed to resign and tender his shares, neither of which he was obligated to do.

Based on its conclusion that Plaintiffs are not intended third party beneficiaries of the Purchase Agreement, the Court denies Plaintiffs' Motion for Summary Judgment as to Count IV and grants summary judgment as to Count IV in favor of Defendant.[12]

### 2. Registration Agreement

■ Section 1.1(a) of the Registration Agreement entered into by Defendant, Plaintiffs, and the Shareholders on November 27, 1996, provides:

> As soon as practicable following the date hereof, [Defendant] shall prepare and file with the Commission a registration statement on Form S–3 with respect to all of the Registrable [LLK] Shares and shall use its best efforts to cause such registration statement to become effective as soon as practicable, but in any event not later than the 365th day after the date hereof, so as to permit the sale to the public of the Registrable [LLK] Shares.

(Registration Agreement § 1.1(a).) In Count I of their Complaint, Plaintiffs assert that Defendant has breached Section 1.1(a) by failing to register the LLK stock. They seek damages equal to the interest on the cash they would have received on the sale of the LLK shares prior to the 365th day and the opportunities foregone for lack of that cash. Count II of Plaintiffs' Complaint asserts a claim for breach of the Indemnity Clause of the Registration Agreement which provides in relevant part:

> [Defendant] further agrees that in the event the registration statement relating to the Registrable Shares is not effective on the 365th day after the date hereof, [Defendant] shall indemnify each holder

chase Agreement because the Purchase Agreement provides for Defendant to make the Guaranty Payment to the Shareholders, not directly to Plaintiffs. *See Macksey*, 633 N.E.2d at 413 n. 14; *see also Choate, Hall, Stewart v. SCA Services, Inc.*, 378 Mass. 535, 392 N.E.2d 1045, 1052 (1979) (finding plaintiff was intended third party beneficiary of contract between employer and employee because contract provided that employer pay plaintiff directly for debts owed by employee); *St. Charles v. Kender*, 38 Mass.App.Ct. 155, 646 N.E.2d 411, 412 (1995) (finding HMO subscriber had standing to sue doctor as third party beneficiary of contract between doctor and HMO because provision of medical services by doctor to subscriber directly discharged doctor's contractual obligations to HMO); *Dushkin v. Desai*, 18 F.Supp.2d 117, 123 (D.Mass.1998) (finding residents of yoga center could maintain breach of contract action against center's guru based on allegation that residents were "direct recipients" of guru's contract with yoga center to provide services).

12. A district court may grant summary judgment sua sponte when (1) "discovery is sufficiently advanced that the parties have enjoyed a reasonable opportunity to glean the material facts" and (2) the targeted party has received "appropriate notice and a chance to present its evidence on the essential elements of the claim or defense." *Berkovitz v. Home Box Office, Inc.*, 89 F.3d 24, 29 (1st Cir.1996); *Bank v. International Business Machines Corp.*, 145 F.3d 420, 431 (1st Cir.1998).

Here, Plaintiffs have had ample notice and opportunity to present their arguments with respect to their status as third party beneficiaries: the Court ordered the parties to submit supplemental briefs on the issue and allowed Plaintiffs to file a response to Defendant's Supplemental Brief. Moreover, nowhere in their Motion for Summary Judgement, their Supplemental Brief, or their Response to Defendant's Supplemental Brief have Plaintiffs suggested that discovery was necessary on the third party beneficiary question.

The Court notes that nothing in this order prevents Plaintiffs from recovering from the Shareholders the portion of the Guaranty Payment to which Plaintiffs are entitled under Section 8(a)(ii) of the Shareholders' Agreement. Both Plaintiffs and the Shareholders are parties to the Shareholders' Agreement.

of Registrable [LLK] Shares for any dimunition in value in the Registrable [LLK] Shares which occurs between the 365th day and the date of sale of said Registrable [LLK] Shares.

(Registration Agreement § 1.4.) To date, Plaintiffs have not sold the LLK shares. They nevertheless seek damages equal to the dimunition in the value of the LLK shares from the 365th day after the date of the Registration Agreement (November 27, 1997) to the present, or, in the alternative, they ask the Court to order Defendant to buy back all shares of LLK stock which Plaintiffs received from the Shareholders under the terms of the Shareholders' Agreement.

While Defendant admits that it has yet to register the LLK stock as required by Section 1.1(a) of the Registration Agreement, it argues that Plaintiffs are entitled only to those damages accruing after November 27, 1997. Defendant also contends that Plaintiffs' claim for breach of the Indemnity Clause is not ripe for adjudication because the LLK shares have not been sold, and that any damages to which Plaintiffs eventually may be entitled under the Indemnity Clause should be offset because Plaintiffs failed to mitigate their damages by selling the LLK shares as soon as possible after November 27, 1997, pursuant to SEC Rule 144.

The Court finds that Defendant clearly has breached Section 1.1(a) of the Registration Agreement based on the unambiguous language of that section and Defendant's admission that it has not registered the LLK shares. The Court further finds, however, that Plaintiffs' claim for damages resulting from this breach is too speculative to permit recovery since it is impossible to determine when the damages, if any, accrued within the 365 days after the date of the Registration Agreement or the amount of those damages as the price of the LLK stock was subject to change on a daily basis.

■ A more appropriate remedy for Defendant's breach of its obligation to register the LLK stock is an order of specific performance. Indeed, the parties contemplated such an order in Section 5 of the Registration Agreement which provides:

*Specific Performance:* The parties hereto stipulate that the remedies at law of any party hereto in the event of any default or threatened default by any other party hereto in the performance of or compliance with the terms hereof are not and will not be adequate and that, to the fullest extent permitted by law, such terms may be specifically enforced by a decree for the specific performance thereof, whether by an injunction against violation thereof or otherwise.

(Registration Agreement § 5.) In light of this provision, the Court hereby directs Defendant to register the shares of LLK stock as required by the Registration Agreement within 60 days of this order and warns that failure to do so may result in a finding of contempt and assessment of penalties.[13]

The Court anticipates that Plaintiffs will proceed to sell their LLK shares once those shares have been registered by Defendant. Any indemnification due Plaintiffs following the sale of the shares will be governed by the Indemnity Clause of the Registration Agreement. In the event that Defendant fails to meet its obligations under the Indemnity Clause, Defendant may be subject to suit by Plaintiffs for breach of the Indemnity Clause. Plaintiffs' current claim for breach of the Indemnity Clause as stated in Count II of their Complaint is premature because Defendant's performance is not required until after the shares are sold. Defendant's arguments concerning mitigation are simi-

---

**13.** The terms of the Indemnity Clause provide no basis for the Court to order Defendant to buy back the LLK shares.

larly premature. The Court denies Plaintiffs' Motion for Summary Judgment as to Count II and grants summary judgment in favor of Defendant as to that Count.[14]

### B. Plaintiffs' Motion to Strike

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, the Court grants Plaintiffs' unopposed Motion to Strike as to those portions of Defendant's Response to Plaintiffs' Motion for Summary Judgment which refer to settlement negotiations between Plaintiffs and Defendant.

### IV. CONCLUSION

For the reasons discussed above, the Court orders as follows. Plaintiffs' Motion for Summary Judgment is GRANTED IN PART as to Count I to the extent that the Court found Defendant breached the Registration Agreement by failing to register the LLK shares and DENIED as to the remainder of Count I. Summary judgment is GRANTED IN PART in favor of Defendant as to Count I to the extent that the Court found Plaintiffs' claim for damages resulting from this breach too speculative to permit recovery. Plaintiffs' Motion for Summary Judgment is DENIED as to Count II and summary judgment is GRANTED in favor of Defendant as to that Count. Plaintiffs' Motion for Summary Judgment is GRANTED as to Count III to the extent that the Court orders Defendant to register the LLK shares pursuant to the Registration Agreement within 60 days of the date of this order. Plaintiffs' Motion for Summary Judgment is DENIED as to Count IV and summary judgment is GRANTED in favor of Defendant as to that Count. Plaintiffs' Motion to Strike Portion of Defendant's Response to Plaintiffs' Motion for Summary Judgment is GRANTED.

*SO ORDERED.*

---

14. The Court's order directing the parties to submit supplemental briefs addressing whether Plaintiffs had standing to sue for breach of the Indemnity Clause given that the LLK shares had not yet been sold provided Plaintiffs with notice and an opportunity to be heard on the viability of their claim for breach of the Indemnity Clause. Plaintiffs did not request discovery on this issue in their Supplemental Brief or their Response to Defendant's Supplemental Brief.